CYANE, The, (JOHNSON v.). See Case No. 7,381.

---

## Case No. 3,527.

### The C. Y. DAVENPORT.

[3 Ben. 63.][2]

District Court, S. D. New York. Dec. Term, 1868.

#### COLLISION—TOWBOAT.

1. Where a steam-tug took in tow a schooner, to tow her out from a pier, next to which was a high balance dock, which shut off the view to the west, and, when the schooner got just clear of the pier, another tug was seen coming from the west with a barge in tow, which came in collision with the schooner: *Held*, that the tug having the schooner in tow was negligent, and liable for the collision.

2. That, even if the other tug and the barge were in fault, that would not diminish the liability of this tug, especially as those vessels were not joined in this action.

---

[1] [From 2 Am. Law Rev. 259.]

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

In admiralty.

Stewart, Rich & Woodford, for libelants.

Beebe, Donohue & Cooke, for claimant.

BLATCHFORD, District Judge. This is a libel by Jeremiah N. Ayres and Theodore Davenport, to recover damages for a collision which occurred on the 9th of August, 1866, between the schooner G. W. Purnell, owned by them, and a barge called the Annie. The schooner was at the time in tow of the C. Y. Davenport. The barge was in tow of the tug Henry Smith. The schooner had been lying on the upper or easterly side of pier No. 42, East river, New York, bow outward, with the end of her bowsprit seven or eight feet inside of the end of the pier. About six o'clock in the morning, the C. Y. Davenport came to the outer end of pier No. 42, in order to take the schooner in tow, to tow her to 12th street, East river. The tide was strong flood. In the slip next west of pier No. 42, and between pier No. 41 and pier No. 42, there was a large high floating balance dock, which projected out about ten feet beyond the end of pier No. 42, and obscured the view down the river from the end of pier No. 42. The C. Y. Davenport was a small propeller, fifty-five or sixty feet long. The schooner was ninety odd feet long from the end of her boom to the end of her bowsprit. The C. Y. Davenport lay at the end of pier No. 42, heading to the westward or down the river, when she hitched on to the schooner by a hawser ten or fifteen fathoms long, running from the windlass bitts of the schooner to the after cleets on the C. Y. Davenport. The order was then given from on board the C. Y. Davenport to the schooner, to put the schooner's helm hard a-port, which order was obeyed. The wind was south-east. The C. Y. Davenport cast off and started ahead and pulled the schooner out just clear from the pier, when the Annie and the Henry Smith were seen coming up close to the ends of the piers, very swiftly, with the tide. When this was seen the C. Y. Davenport backed so as to slack the hawser between her and the schooner, but the schooner was struck by the barge, and her bowsprit and both of her masts were knocked out of her by the collision.

On these facts alone the C. Y. Davenport would be liable for the collision. But, in addition, it is shown by Ryan, a witness for the claimant, and who was on the barge at the time, that he. from the barge, saw the C. Y. Davenport before she left the end of pier No. 42, and while she was lying there, and saw her start and pull the schooner after her. It is very clear that no care was exercised on the C. Y. Davenport, or the barge and her tug would have been seen from on board of the C. Y. Davenport before the latter started.

The only defence set up is, that the barge and her tug were in fault in being so near the piers, and that, if the latter tug had ported her helm, on seeing the C. Y. Davenport and the schooner, there would have been no collision. It may be that there was fault in those vessels, but that does not diminish the liability of the C. Y. Davenport, and those vessels are not sued in this action.

There must be a decree for the libelants, with costs, with a reference to a commissioner to ascertain and report the damages sustained by them by the collision.